# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF FLORIDA

### JACKSONVILLE DIVISION

JOSEPH V. MOORE,

**Plaintiff, pro se**

**v.**                                              **Case No.: 3:12-cv-797-J-20MCR**

**THE CITY OF ST. AUGUSTINE, FLORIDA,**

**Defendant,**

_____/

## AMENDED COMPLAINT

## CIVIL ACTION, TORT RELIEF,

## AND INJUNCTIVE RELIEF SOUGHT

**Plaintiff, JOSEPH V. MOORE, pro se,** asserts the following:

This amended complaint seeks to add paragraphs that include a tort for Intentional Infliction of Emotional Distress, and Non-Intentional Infliction of Emotional Distress due to new information that has been brought to the attention of the Plaintiff.

### I.     JURISDICTION

1

The jurisdiction of this court is invoked pursuant to the Acts of Congress known as **28 U.S.C.A. §1331**, as this case involves the violations of the laws of the United States, specifically the United States Constitution, **42 U.S.C.A. §1983**. Furthermore, this court also has supplemental jurisdiction to hear state claims under the State of Florida pursuant to **28 U.S.C.A. §1367(a)**, as all of the state law claims mentioned throughout this complaint arise out of the same transactions or occurrences as the violations of the federal laws civil rights violations.

## II.   <u>**PARTIES**</u>

1. **Plaintiff, Joseph V. Moore**, a pro se litigant, is a citizen of the United States who resides in Saint Augustine, Florida. All of the events delineated herein occurred within the aforementioned city and, therefore, within the jurisdiction and venue of the United States District Court Middle District of Florida Jacksonville Division.

2. **Defendant, The City of Saint Augustine, Florida**, has under its control, the City of Saint Augustine, Florida Police Department in its official capacity, and is subject to suit under **42 U.S.C.A. §1983**.

## III.   <u>**FACTUAL ALLEGATIONS**</u>

3. The facts are as follow: On Plaintiff was arrested for Felony Aggravated Assault with Deadly Weapon Without Intent F.S. (784.021 1a) up to 5 years in prison, and Misdemeanor Obstruction of an Officer Without Violence F.S. (843.02) on the date of 25 March 2011.

4. The Felony charge was dismissed and nolo contendere was pled to the misdemeanor.

5. The arresting officer included in his report that the Plaintiff had confessed to "pulling the gun", and that the officer would take into custody the two video angles he and his colleagues reviewed on the businesses DVR surveillance system.

6. The Arresting Officer also stated that the Plaintiff had a motivational grudge against the witness Alberto Santana, when in fact it was Alberto Santana's girlfriend who was fired from her job which created the grudge and Protami characterized the Plaintiff's presence at the Jiffy Lube incorrectly.  Also, the Plaintiff's wife never worked at Texaco which is a false statement in the Police Report.

7. On 4 April 2011, Notice of Discovery was filed by the Plaintiff's attorney.

8. On 20 April 2011 the Prosecutor submitted the Discovery list which did not include any video evidence.

9. Throughout the months of April, May and June, the prosecutor had no video evidence in hand and could not turn any video over to the Plaintiff's attorney.

10. During this time, the Plaintiff suffered severe emotional distress fearing 5 years in prison for something that he did not do and that the Defendant was going to help place the Plaintiff in prison wrongfully.

11. The Plaintiff already suffers from severe emotional distress due to his fight in the Global War on Terrorism and was susceptible to extreme mental and physiological damage caused by the **BRADY** violations that the Defendant committed.

12. The Plaintiff discussed the extreme emotional and physical distress multiple times with mental health professionals as he lost sleep, suffered emotional distress, and was panicking due to the impending doom of a prison sentence he did not deserve.

13. After months of lack of cooperation from the Defendant, the Prosecutor told the Judge hearing the case stated that, "We are having some difficulty retrieving some videos from SAPD." Which is documented in the court transcripts.

14. The Prosecutor then sent an investigator to find the video and it was eventually found.

15. After reviewing the video, the Prosecutor moved to dismiss the case based on finding the video exculpatory on 27 June 2011.

16. On 9 August 2011 the Felony Case number 110000596CFMA St. John's County, FL, against the Plaintiff was closed.

17. The Plaintiff continued to suffer from the ordeal financially and emotionally due to the strain of a vigorous defense with little information and having to make payments to an attorney that he could not afford.

18. The continuing payments to the attorney that the Plaintiff could not afford continued to aggravate the emotional distress that the Plaintiff was under.

19. The Defendant had ignored and violated Florida Discovery Laws, specifically **Florida Rules of Criminal Procedure 3.220. Discovery (b)(1)** Prosecutor's Obligation, "Within 15 days after the service of Notice of Discovery".

20. The Defense included two statements in the charging affidavit that were proven factually false. Those statements were the confession, and that the Defendant would pick up the video in a few days.

21. The Prosecutor and Plaintiff's defense counsel concluded that no gun was ever pulled, therefore the confession was false and that evidence "the arresting officer William Protami's statement" was tampering with evidence and is subject to suit under **42**

4

<u>U.S.C.A. §1983</u> and is also a violation of the Plaintiff's civil rights to due process under the 14th amendment, a right to a speedy and fair trial.

22. The Defendant's withholding of exculpatory evidence for several months with the **Intent to Inflict Emotional Distress,** was a blatant disregard for the Plaintiff's Due Process Civil Rights, the Florida Rules of Criminal Procedure, and is subject to suit under <u>42 U.S.C.A. §1983.</u>

23. The violation of the Plaintiff's due process civil rights is also basis for a legal **Tort** for placing the Plaintiff under unnecessary and illegal persecution by a practice of a municipality which has the capacity to operate under the color of law.

24. The withholding of the evidence by the Defendant, after several official request from the Prosecutor's office constitutes a practice that this court must find to be disturbing enough as to shock the conscience of the average person as it could lead to other citizens being falsely persecuted due to the practice of withholding exculpatory evidence.

25. Video forensic analysis conducted by Stutchman Forensic Laboratory of Napa, California, concluded that the video was mishandled and altered the video to such a degree that important factual information was lost.  It also allowed for a void in the video data that would allow significant alteration of the video.  This subjects the Defendant to suit under <u>42 U.S.C.A. §1983</u>.  The video should have contained more assailants against the Plaintiff, but when transferred to phone video, the original data then becomes lost.

5

26. This particular DVR system provides for a disc copy in original format, but a phone video was submitted to the prosecutor.

27. It is reasonable to assert that the entire Saint Augustine Police Department was aware of the incident on 25 March 2011, and also knew of the video as several officers watched the video and discussed evidentiary matters over police radio within audible distance of witnesses.

28. The Plaintiff requested that the Defendant turn over the exculpatory video for discovery several times and was denied.  This constitutes a **Brady** violation and the repeated acts to avoid compliance with known laws of Discovery and Evidence constitutes a practice of violations by the Defendant definitively.

29. In the United States Supreme Court case **Monell v. Department of Social Services of the City of New York**, 436 U.S. 658 (1978), the Court found that a "person" in 1983 to include a municipality, and that a municipality can be held liable for a policy that deprives a person of their civil rights under **1983.**

30. Based on the fact that supervisory officers were at the scene of the original incident along with several other officers, warrants defining the Department at fault for a practice to inflict damage.

31. The Department's official Chain of Command responsible for coordinating with the Prosecutor's Office to turn over requested evidence is also at fault several times for failing to turn over known evidence with the intent to inflict damage as a municipal entitie's custom or practice.

6

32. It can only be concluded that in regards to the Saint Augustine Police Departments knowing and willful intent to withhold evidence as a municipal custom or policy, that the officer knowingly wrote a false confession in his report, tampered with evidence, and the Department knew of the tampered evidence, and then conspired to withhold the tampered evidence, should be held accountable. The Plaintiff maintains that this was a violation of his civil rights and that the Defendant is subject to suit under **42 U.S.C.A. §1983**.

## E. <u>INTENT TO INFLICT EMOTIONAL DAMAGE</u>

The Defendant acted and perpetrated actions with the **Intent to Inflict Emotional Damages** following:

39. The St Augustine Police Department is consisted of Officers of the law, they must reasonably know that a felony conviction would cause severe emotional distress to a reasonable person. A reasonable person having their, family, freedom, rights, and property taken away from them for several years would understandably suffer from emotional distress, especially if that person were innocent. Additionally, a false confession was written in the officer's report and further proves the Defendant intended to inflict emotional distress despite the true facts of the case. This is in violation or **Florida Statute 817.49- False reports of commission of crime.**

40. The Defendant's actions were so extreme and outrageous, that they would cause outrage in the community. If the Defendant were allowed to withhold exculpatory evidence at will in any case that they wish, it is reasonable to expect that there

7

would be an outrage in the community for the relentless violations of the civil rights

of the community.  Giving the Defendant the ability to make or fabricate evidentiary

process that is not in accordance with the law allows the Defendant to become an

uncontrollable force with unknown consequences to the community that would not

serve in the community's best interest.  The community would be outraged at an

unchecked police force.

41.  The Defendant's conduct during the pre-trial process caused the Plaintiff's severe

emotional distress.  As the Plaintiff knew that there was a video tape that would

prove the Plaintiff's innocence, the Plaintiff desperately needed to find the

exculpatory video.  The Defendant intentionally withheld the exculpatory evidence

for several months from the Plaintiff and the State Attorney's Office.  The existence

of the video was written in the officer's report and the officer stated that he would

take the video into custody.  Official Police property records prove that the video

was never admitted into police evidence and the police repeatedly ignored the

Assistant State Prosecutor's request for the video.  The Asst. Prosecutor is on record

in Court having stated to the Judge presiding over the case that there was a problem

with getting the Defendant to cooperate in regards to the exculpatory video. **Clarke**

**v Montgomery Ward and Co.,298 F.2d 346,348 (4th Cir. 1962)** Where the Court

stated "It should be no defense that the accuser acted in good faith in initiating

prosecution, if he remains silent and allows it to go on when he later learns he was

in error. Also, **United States v Marion, 404 U.S. 307,320,92 S.CT. 455,463, 30 L.Ed.**

**2d 468 (1971),"**a prosecution is "a public act that may seriously interfere with the

defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create an anxiety in him, his family and his friends.""

42.   Over the course of several months of facing 5 years in prison for a felony that the Plaintiff did not commit, the Plaintiff suffered more severe emotional distress and even discussed this issue with a mental health professional several times.  This matter is on record and the Plaintiff has the records.

43.   The Plaintiff further suffered from a stress induced malady called "diverticulitis" which became septic and caused the Plaintiff's body temperature to reach over 103 degrees for several days and spend several days in the Flagler Hospital Intensive Care Unit.

44.   The Plaintiff had at one point stopped breathing because of the malady. Subsequent discussions with doctors and the Plaintiff attributed the "diverticulitis" incident to stress which the Plaintiff who had been under an enormous amount of stress for several months which was enough time for the malady to develop.

45.   The emotional distress was so severe, that a reasonable person would have suffered from some form of physical breakdown due to months of facing the gross practice by the Defendant of withholding, evidence, writing false confessions, and tampering with evidence.  The Plaintiff having become septic, having a fever over 103 degrees, and having stopped breathing at one point in the hospital, is proof that the plaintiff could not endure the stress that had been placed on him from the previous months by the Defendant.

9

# V. <u>DAMAGES</u>

46.   Based on the previous facts and legal assertions, the Plaintiff suffered public

humiliation, legal expenses, forensic expenses, loss of convenience and time,

deprivation of personal property and life, deprivation of civil rights, suffered from a

stress induced malady that almost claimed the life of the Plaintiff by three different

mechanisms, and any other damages arising out of these facts that may be revealed

throughout the discovery and investigation of this action.

47.   The Plaintiff suffered from such Intentional Infliction of Emotional Distress that is

thoroughly medically documented, that the Plaintiff almost lost his life due to the

actions of the Defendant.

48.   The Plaintiff is a decorated combat veteran who has had to engage many enemy

overseas for the law of the land that he swore an oath to and is terribly disturbed by

the actions of the Defendant who is supposed to abide by the law of the land that

the Plaintiff has had to fight to protect both foreign and domestic.  The actions of

the Defendant are a traumatic reality to the Plaintiff that a municipality would

condone, allow, or defend such actions that are clearly not in accordance with the

U.S. Constitution.

49.   It is damaging to the Plaintiff to not stand up to anyone who distorts, abuses,

misuses, or ignores the law of the land for the Plaintiff to this day has not untaken

the oath to uphold and defend the Constitution of the United States of America.

10

# VI. <u>PRAYER FOR RELIEF</u>

Based on the legal and factual assertions stated in this complaint, Plaintiff Joseph V. Moore requests the following relief:

a) **Under Florida Statutes> Title XLVII>Chapter 961-Victims of Wrongful Incarceration Compensation**, where a victim of wrongful incarceration is found to be innocent is entitled to $50,000 per year of wrongful incarceration.  The Plaintiff was facing a 5 year prison sentence which would have amounted to $250,000 under **Chapter 961.**

b) Compensatory damages for the; **A. Tampering with Evidence and False Confession** claim, **B. Tampering With Evidence** claim, and **C. Withholding Evidence** claim, all amount to three violations of the Plaintiff's Civil Rights, and any one of which could on their own have caused the Plaintiff to be sent to prison for five years and wrongfully incarcerated, justifies compensatory damages by applying **Paragraph (a)** to the three violations for a total of **$750,000. (**<u>Smith v. Wade</u>**,** 461 U.S. 30, 103 S.Ct. 1625, 75 L. Ed. 2d 632 [1983]).

> The Supreme Court has held that similar to Tort Law, Punitive Damages
> are available under 1983.  A Plaintiff is entitled to punitive damages if the jury
> finds that the defendants conduct was reckless or callously indifferent,
> or if the Defendant was motivated by evil intent.  The jury has the duty
> to assess the amount of compensatory damages.

11

1. The Plaintiff, in order to find an amicable approach to this claim, realizes that the penalty he would have faced in the Felony trial would have been from three (3) to five (5) years in prison.

2. The Plaintiff is willing to apply the minimum number of years of possible imprisonment of three (3) years to the damage calculations. Under **F.S. Title XLVII Chapter 961- Victims of Wrongful Incarceration,** the three (3) year damage calculation would total **$150,000.**

3. The plaintiff wishes to resolve this matter as he wishes to maintain upstanding citizenry in the City of Saint Augustine and would accept $150,000 for compensatory damages plus $25,000 for attorney's fees and **Eggshell Skull Doctrine,** if the two parties agree prior to trial, in order to alleviate stress on the City of Saint Augustine of a trial as a good faith gesture.

4. If the two parties cannot agree on a settlement, the **Plaintiff** will seek **$150,000** per count of violations of the **Plaintiff's** rights that caused such emotional distress.

5. Those counts the **Plaintiff** seeks to prove are:

   a. Knowingly withholding exculpatory evidence despite fiduciary duty, a "Brady" violation. A violation of the 14th **Amendment- Speedy and "Fair" Trial.**

12

    b. Knowingly writing a false confession in a police report. Which is a violation of **F.S. 817.49-False reports of commission of crimes.** Also a violation of the **14th Amendment-"Fair" Trial.**

    c. Knowingly writing a false statement as to the **Plaintiff's** motive in a police report. A violation of **F.S. 817.49-False reports of commission or crimes.** Also a violation of the **14th Amendment-"Fair" Trial.**

    d. Knowingly mishandling evidence in order to secure conviction. A violation of the **14th Amendment-"Fair" Trial.**

    e. **"Any Other"** violations that are uncovered during the investigative process of this claim will be added to the calculation of damages.

    f. **The Eggshell Skull Doctrine** will be applied to each violation that distressed the **Plaintiff.**

c) Retraining for the City of Saint Augustine, Florida regarding civil rights and due process as applicable.

d) Intent to Inflict Emotional Distress Damages under **42 U.S.C.A. §1983; (Monroe v. Pape, 365 U.S. 167 (1961)).** The court held that police officers acting outside the scope of law despite being "under the color of law" can be held liable for Intent to Inflict Emotional Distress. The City was not held liable, however, this point was later overturned by the court and municipalities can be held liable for Intent to Inflict Emotional Distress under **Monell v. City of New York Dept. of Social Services,** 436 U.S. 658 (1978), where a

municipality was later held as a person under **1983**, a municipality can be held liable for Intent to Inflict Emotional Distress Damages.

e) Under paragraph (d) the Plaintiff simply asks to enforce (b) for damages.

f) Compensatory damages for **Intentional Infliction of Emotional Distress** such that the Plaintiff nearly lost his life and was hospitalized twice.

g) Compensatory damages for **Nonintentional Infliction of Emotional Distress** such that the Plaintiff nearly lost his life and was hospitalized teice.

h) Any further relief that the Plaintiff may be entitled to.

i) Any admonishments by the court against the defendant as the court deems necessary.

j) Under the **Eggshell Skull Doctrine,** the tortfeasor must take the Plaintiff as he is. Therefore, compensatory damages that are greater than those that would normally be allowed can be awarded to the Plaintiff if significant damage was the result of the tortfeasors's actions.

Joseph V. Moore, pro se
700 W. Pope Rd. I-71
St. Augustine, FL 32080
(904) 392-6537
e-mail:
surfer65er@yahoo.com

14

Date: 12/17/2012

Copies sent to:

Heath L. Vickers, Esquire
Counsel for Defendant
P.O. Box 447
Jacksonville, FL 32201

## CERTIFICATION OF SERVICE

I, Joseph V. Moore, Plaintiff *pro se,* hereby certify that I have mailed a copy of the

foregoing document to the Defense Counsel, Heath L. Vickers, Esq., at P.O. Box 447,

Jacksonville, FL 32201, by way of U.S. Postal Service First Class Mail on 12/17/2012.

Joseph V. Moore

700 W. Pope Rd. I-71
Saint Augustine, FL 32080
(904)392-6537
Surfer65er@yahoo.com

15